HILL v. BECHTEL

[336 N.C. 526 (1994)]

---

PENNY LYNN HILL, FOR HERSELF AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED v. LOUIS BECHTEL, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE GUILFORD COUNTY DEPARTMENT OF SOCIAL SERVICES, JOHN HAMRICK, IN HIS OFFICIAL CAPACITY AS THE CHAIRMAN OF THE BOARD OF THE DEPARTMENT OF SOCIAL SERVICES OF GUILFORD COUNTY, A CORPORATION, AND THE NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES

No. 303PA92

(Filed 17 June 1994)

**Social Services and Public Welfare § 8 (NCI4th) — food stamps — eligibility for expedited service — notification of refusal**

The trial court erred by granting summary judgment for defendants in a class action in which plaintiff claimed that an applicant for food stamp assistance must be notified in writing when the applicant is not eligible for expedited assistance. The regulatory scheme governing expedited processing and the agency conference to resolve differences which arise over the applicant's eligibility are designed to provide prompt assistance to those who are particularly destitute financially; to effect these goals and to provide meaningful access to the corrective procedures which the regulations make available, the regulations must contemplate that all applicants be informed promptly of a determination of ineligibility for expedited service. Whether or not an applicant requests expedited service is irrelevant to the legal effect of the eligibility determination. However, there is nothing in the Food Stamp Act or the regulations which requires expressly or by implication that notification to applicants be in writing; oral notification is sufficient.

Am Jur 2d, Welfare Laws §§ 53 et seq.

Construction and application of Food Stamp Act of 1964 (7 USCS §§ 2011 et seq.) establishing food stamp program. 13 ALR Fed. 369.

**Eligibility for food stamps under Food Stamp Act of 1964
(7 USCS §§ 2011 et seq.). 118 ALR Fed. 473.**

On defendants' petition for discretionary review pursuant to
N.C.G.S. § 7A-31 of a decision of the Court of Appeals reversing
summary judgment for defendants entered 3 October 1990 by Judge
I. Beverly Lake, Jr., at the 1 October 1990 Civil Session of Superior
Court, Guilford County. Heard in the Supreme Court 13 May 1993.

*Central Carolina Legal Services, Inc., by Stanley B. Sprague,
for plaintiff-appellee.*

*Jonathan V. Maxwell, County Attorney, and Lynne G. Schif-
tan, Deputy County Attorney, for defendant-appellants Bechtel
and Hamrick.*

*Michael F. Easley, Attorney General, by Robert J. Blum, Special
Deputy Attorney General, for defendant-appellant N.C. Dep't
of Human Resources.*

EXUM, Chief Justice.

This appeal presents the question whether an applicant for
food stamp assistance under the Food Stamp Act of 1964, 7 U.S.C.
§ 2020 (1988), and certain regulations passed pursuant to the Act
must be notified by the local Department of Social Services (DSS),
administering the Act in a particular locality, when the local DSS
determines that the applicant is not eligible for "expedited service,"
which significantly reduces the time for processing an application
for food stamp assistance. The Superior Court after considering
the parties' forecast of evidence concluded that no such notification
was required and entered summary judgment for defendants. The
Court of Appeals concluded that written notification was required
and reversed. We conclude that at least oral notification of an
applicant's ineligibility for expedited service is required. We,
therefore, modify and affirm the Court of Appeals' decision.

On 18 April 1990 plaintiff Penny Lynn Hill applied for food
stamps at the High Point office of the Guilford County DSS. The
application form, completed by a DSS employee from answers pro-
vided by plaintiff, disclosed: Plaintiff was recently unemployed and
the mother and custodian of two pre-school children. She owned
no property, had only $3.00 in cash on hand; and her only income

was child support of $50 per week paid to her by her estranged husband. Her apartment rent was $139 per month.

The Food Stamp Act and regulations passed thereunder provide that households which are particularly destitute financially are entitled to receive expedited service. The provisions of the Act and regulations pertinent to this case provide that households with a gross income of less than $150 per month and liquid resources not exceeding $100, or households whose monthly gross incomes and liquid resources are less than their monthly rent (or mortgage) and utilities shall be provided coupons within five days of the date of the application. 7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(i) (1994). A state's application procedures must be designed "to identify households eligible for expedited service at the time the household requests assistance." 7 C.F.R. § 273.2(i)(2).

The DSS interviewer determined plaintiff's child support income disqualified her for expedited service and processed the application for standard service. The interviewer, following agency practice, did not advise plaintiff of the existence of expedited service or that the interviewer had screened plaintiff and deemed her ineligible for expedited service.

About a week later plaintiff contacted the "local legal aid office" and learned for the first time of the existence of expedited food stamp processing.

Thereafter, on 7 May 1990, plaintiff filed a class action suit against the director and chairman of the Guilford County DSS in their official capacities, claiming among other things that she was entitled to expedited service and that she and persons similarly situated were entitled to be notified when they were screened for and determined to be ineligible for such service. She prayed for injunctive and declaratory relief concomitant with her claims.

On 8 May 1990 plaintiff requested and received an "agency conference" at DSS. Following the conference, plaintiff began to receive food stamps "around May 10, 1990."

On 22 June 1990 plaintiff filed an amended class action complaint, adding the North Carolina Department of Human Resources (DHR) as a defendant. The amended complaint alleges that plaintiff's only source of income is child support,

"which her estranged husband pays to her sporadically. While her husband promised to pay $50 a week in cash or toward the bills, he had paid only about $150 during the last several months. Between April 1 and April 18, 1990, [her] husband paid her only $25 in cash plus paid $70 towards bills. He made no further contributions during the month of April."

The amended complaint alleges further that plaintiff was eligible for expedited service when she initially applied for food stamps and that defendants were required to notify her that she had been screened for and determined ineligible for expedited service and of her right to an agency conference to contest this determination. The amended complaint seeks injunctive and declaratory relief.

Defendants, on 23 July 1990, moved to dismiss plaintiff's amended complaint for lack of subject matter jurisdiction, Rule 12(b)(1), and for failure to state a claim, Rule 12(b)(6). The motion recites: "One day after the filing of the Complaint, the Plaintiff presented different information at an agency conference held at her request which made her eligible for expedited food stamp issuance and this matter is now moot." Plaintiff, on 29 August 1990, moved for summary judgment and, on 5 September 1990, moved for class certification.

All motions came on for hearing before Judge Lake, who, upon a forecast of evidence consisting of plaintiff's affidavit and defendants' responses to plaintiff's requests for admissions and plaintiff's interrogatories, treated defendants' motion to dismiss as a motion for summary judgment. The forecast of evidence was in keeping with the facts as related above. According to plaintiff's affidavit: The DSS interviewer who processed plaintiff's food stamp application on 18 April 1990 asked plaintiff how much child support her husband was paying and plaintiff told her he was paying $50 a week. Actually he had paid only $95 from 1 April to 18 April, $70 directly to plaintiff's creditors and $25 in cash to plaintiff. He made no more payments through the month of April. The DSS interviewer never mentioned the expedited service program to plaintiff and advised plaintiff that it normally took 30 days to process a food stamp application. Plaintiff and her children subsisted on "handouts from friends and relatives" from 18 April until 10 May, during which time they mostly had toast for breakfast, peanut butter and crackers for lunch and hotdogs for supper. "There was hardly any milk at all" for the children. Plaintiff was never notified

HILL v. BECHTEL

[336 N.C. 526 (1994)]

of the outcome of the 8 May agency conference, but she began receiving food stamps "around May 10, 1990." Plaintiff's understanding was that she "received the food stamps under the regular processing standards, since by then DSS had obtained all the information necessary to approve my application."

Defendants' discovery responses showed that because of defendants' understanding of the governing regulations, food stamp applications are processed as follows: All applicants are screened for expedited processing on the date of the application. Applicants who inquire about expedited processing have the program explained and are told verbally whether they meet the criteria. Applicants who do not inquire about expedited processing are not told about the program. If they are found eligible for it, they are so informed. If found ineligible, they are not advised. All applicants are advised in writing on the application form itself that they may request a "fair hearing" if they "disagree with any action taken on [the] Food Stamp Application."

On this evidentiary showing Judge Lake granted summary judgment in favor of all defendants. The Court of Appeals reversed, holding that all food stamp applicants who were determined to be ineligible for expedited service were entitled to written notice of that determination and of their right to an agency conference on this issue. We conclude, for the reasons which follow, that all food stamp applicants must be informed at least orally, but not necessarily in writing, of the existence of the expedited service entitlement. We also conclude that when a food stamp applicant is determined to be ineligible for expedited service, whether or not the applicant requested such service, the applicant must be so advised at least verbally, but not necessarily in writing. The applicant must also be verbally advised of entitlement to the review procedures available to correct any erroneous entitlement determination.

Pursuant to the regulations passed to implement the Food Stamp Act, every application for food stamp assistance is screened when filed to determine whether the household is eligible for expedited service. 7 C.F.R. § 273.2(i)(2). This screening occurs regardless of whether the applicant requests expedited service. Applicants found ineligible for expedited service are entitled to challenge this determination at an "agency conference." 7 C.F.R. § 273.15(d) (1994). If the matter is not resolved satisfactorily

to the applicant at this conference, the applicant is entitled to a "fair hearing." *Id.*

Section 273.15(d) provides:

(d) *Agency conferences.* (1) The State agency shall offer agency conferences to households which wish to contest a denial of expedited service under the procedures in § 273.2(i). The State agency may also offer agency conferences to households adversely affected by agency action. The State Agency shall advise households that use of an agency conference is optional and that it shall in no way delay or replace the fair hearing process. The agency conferences may be attended by the eligibility worker responsible for the agency action and shall be attended by an eligibility supervisor and/or the agency director, and by the household and/or its representative. An agency conference may lead to an informal resolution of the dispute. However, a fair hearing must be held unless the household makes a written withdrawal of its request for a hearing.

(2) An agency conference for households contesting a denial of expedited service shall be scheduled within 2 working days, unless the household requests that it be scheduled later or states that it does not wish to have an agency conference.

*Id.* Section 273.15(a) states: "except as provided in § 271.7(f), each State agency shall provide a fair hearing to any household aggrieved by any action of the State agency which affects the participation of the household in the Program." 7 C.F.R. § 273.15(a) (1994). Section 273.15(f) provides:

(f) *Notification of right to request hearing.* At the time of application, each household shall be informed in writing of its right to a hearing, of the method by which a hearing may be requested, and that its case may be presented by a household member or a representative, such as a legal counsel, a relative, a friend or other spokesperson. In addition, at any time the household expresses to the State agency that it disagrees with a State agency action, it shall be reminded of the right to request a fair hearing. If there is an individual or organization available that provides free legal representation, the household shall also be informed of the availability of that service.

7 C.F.R. § 273.15(f).

HILL v. BECHTEL

[336 N.C. 526 (1994)]

The regulatory scheme governing expedited processing and the agency conference to resolve differences which arise over the applicant's eligibility is designed to provide prompt assistance to those who are particularly destitute financially. The emphasis is on quick identification of those eligible for the expedited service and quick correction of any erroneous determination of ineligibility. To effect these goals and to provide meaningful access to the corrective procedures which the regulations make available, the regulations must contemplate that all applicants be informed promptly of a determination of ineligibility for expedited service. Without such prompt information, the corrective process will not be promptly triggered; and, as in the case at bar, there will be delay which might have been avoided in the issuance of food stamps. "In our endeavor to ascertain the purpose of the statute, we should also have due regard to the rule that the spirit and reason of the law shall prevail over its letter, especially where a literal construction would work an obvious injustice." *State v. Bell*, 184 N.C. 701, 705, 115 S.E. 190, 192 (1922). Matters implied by the language of a statute must be given effect to the same extent as matters specifically expressed. *In re Wharton*, 305 N.C. 565, 574, 290 S.E.2d 688, 693 (1982); *Iredell County Bd. of Educ. v. Dickson*, 235 N.C. 359, 361, 70 S.E.2d 14, 17 (1952). We conclude, therefore, that the regulations discussed, while not expressly providing for such notice, clearly imply that all applicants for food stamp assistance be promptly notified, at least orally, when they have been determined to be ineligible for expedited service and the procedures by which this determination may be challenged.

Defendants contend that such notice is required under the regulations only when an applicant has been denied expedited service. They argue that applicants can be denied such service only if they have first requested it. Applicants who fail to request it, say defendants, are not denied the service even if they are found to be ineligible for it.

We are unpersuaded by this argument. In essence it is a distinction without a difference. First, it puts too much of a premium on food stamp applicants' knowledge of available programs. Those who know enough to request the expedited service are placed in a superior position relative to obtaining the expediting service than those who do not know. Second, such a practice runs contrary to the requirement in the Food Stamp Act itself that the state agency administering the food stamp program actively assist ap-

plicants in completing the application process. 7 U.S.C. § 2020(e)(3). Finally, whether or not an applicant requests expedited service is irrelevant to the legal effect of the eligibility determination. Every application is screened for expedited service eligibility regardless of whether it is requested. 7 C.F.R. § 273.2(i). There is no provision in the regulations for making such a request. When the State agency determines that a household is ineligible for expedited service such a determination in effect denies the household expedited service. As the Court of Appeals correctly reasoned, "[t]he plain meaning of both 'ineligible' and 'denial' is that of negative qualification." *Hill v. Bechtel,* 106 N.C. App. 675, 680, 417 S.E.2d 844, 847 (1992).

Contrary to the Court of Appeals opinion, however, we find nothing in the Food Stamp Act or the regulations which requires expressly or by implication that notification to applicants be in writing. We conclude oral notification of the ineligibility determination and the procedures for reviewing this determination is sufficient to comply with both the Act and the regulations.

Plaintiff argues that written notification is required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by the Law of the Land Clause of the North Carolina Constitution. Because these constitutional questions were not brought forward in defendants' petition for discretionary review or plaintiff's response thereto, they are not properly before us for review and we do not address them. N.C. R. App. P. 16(b).

As modified herein the decision of the Court of Appeals is affirmed. The case is remanded to the Court of Appeals for remand to the Superior Court for such further proceedings as may be required consistent with this opinion.

MODIFIED AND AFFIRMED.